## THE HYGRADE NO. 8.

## THE DANDY.

## THE CELTIC.

## THE ROTARY.

### Nos. A–15577, A–15649.

District Court, E. D. New York.

Feb. 4, 1941.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for libelant Tank Barge Hygrade No. 8, Inc.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan and Charles F. Welch, both of New York City, of counsel), for libelant Ratazol Transp. Corporation, and tug Dandy, Woodford J. Townsend, claimant.

John R. Stewart, of New York City (Christopher E. Heckman, of New York City, of counsel), for tug Celtic.

BYERS, District Judge.

These causes involve a collision on October 5, 1938, in the Barge Canal about 2,000 feet east of Rexford Flats, between the eastbound steel tank barge Hygrade No. 8 and the westbound steel tank barge Rotary, and were consolidated for trial, by consent.

In the first, the Hygrade No. 8 sues to recover for her damages from the tug Dandy which was pushing the Rotary; and that tug impleaded the tug Celtic which was pushing the Hygrade No. 8.

In the second, the Rotary sues to recover for the damages that she sustained from the tug Celtic, and the latter has impleaded the Dandy.

There is little dispute as to the facts, which are deemed to have been thus established:

(a) The eastbound tow, made up in push-boat fashion, consisted of the Hygrade No. 8, 174 feet long between perpendiculars, 198 feet over-all, 40 feet in beam, in ballast drawing 5½ feet (therefore partially light), and the Diesel tug Celtic, 83.5 feet by 21, with 650 horse power.

(b) At about 2,000 feet west of the southerly bend in which the collision occurred, the latter blew a bend whistle, and proceeded at a 3½-mile speed (one bell) with a 1½-mile current under foot.

(c) No answer to the bend whistle was heard.

(d) This tow was about 30 feet off the southerly side of the Canal on its starboard hand, as the bend was neared; there the Canal turns at about 90° to the south.

(e) The navigable waters which include the bend are about 300 feet wide.

(f) There is a white buoy off the southerly shore of the Canal, at about the center of the arc of the turn. That shore is so conformed and wooded, that vessels approaching on parallel courses are screened from mutual sight until either one enters the bend.

(g) This tow was headed, at the speed stated, to hold the white buoy to starboard in making the required turn around the bend.

(h) When the Celtic tow was about 300 feet west of that buoy, the bow of the Rotary was observed, inclining toward the southerly side of the Canal; that is, to the starboard of the Celtic tow.

(i) The Rotary was then about 200 feet east of the white buoy.

(j) No signal was heard prior to that time by either tug.

(k) The westbound tow consisted of the loaded tank barge Rotary, 172 feet long between perpendiculars, 192 feet overall in length, and 38 feet in beam, being pushed by the Diesel tug Dandy, 102 feet long, 20 feet in beam, with 360 horse power.

(l) That tug had duly blown a bend whistle at about one-half mile east of the bend, and heard no answer.

(m) The Dandy tow proceeded toward the bend, at one bell in about the center of the Canal, but the speed through the water has not been shown. It may be assumed to have been about 3 miles.

(n) The Dandy blew a 2-whistle signal when the tows had reached the positions stated in (h) and (i) above, which the Celtic answered with 1. The expectable wide turn by the Celtic tow, as viewed from the Dandy, justified the 2-whistle signal of the latter in the emergency and in order to avoid a collision.

(o) Both tugs at once stopped their engines; backed, and blew alarm signals, but a collision between the barges took place.

(p) The Hygrade No. 8, at about her starboard bow corner, struck the Rotary on her port bow corner; that is, clearance was narrowly missed.

(q) The Rotary was at fault in that:

1. She proceeded too close to her own port hand in approaching the bend, relying upon the failure to hear any answer to her bend signal to excuse navigation which might prove hazardous to an eastbound tow.

2. There was no lookout posted on the bow of the Rotary, as the tow approached the bend.

(r) The Celtic was at fault in that:

1. Approach to this sharp bend was made at a speed of 5 miles, which was calculated to cause the tow to swing so wide, in making a starboard turn, as to endanger a westbound tow, even though it were in its starboard side of the channel in approaching the bend.

2. The lookout on the Hygrade No. 8 did not report the presence of the Dandy and her tow to the navigator of the Celtic.

(s) The mutual faults which brought about this collision consisted in the fact that both tug masters proceeded too fast into a blind 90° bend, as though the absence of answer to their bend signals could be treated as an assurance that no navigation was moving on the Canal at that point, other than that for which they were respectively responsible.

It results that each libelant is entitled to recover half damages; no costs.

In the first cause, the Hygrade No. 8 is to recover half damages from the Dandy, and the impleading petition will be dismissed.

In the second, the Rotary will recover half damages from the Celtic, and the impleading petition will be dismissed.

Settle decree.